## LA SAVOIE.

### (District Court, S. D. New York. November 13, 1907.)

SHIPPING—INJURY TO TOW FROM SWELL OF STEAMER—NEGLIGENT MAKE-UP OF TOW.

Injury to a scow in tow, caused by the swell from a meeting steamship in the ship channel in lower New York Bay, *held* not to have been due to the excessive speed or negligent navigation of the steamship, but to the way in which the tow was made up, by fastening two scows within 18 inches of each other, which was negligent, in view of the probable meeting of vessels which would cause swells.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 345.

Liability of vessel for injuries caused by creation of swell, see note to The Asbury Park, 78 C. C. A. 3.]

In Admiralty.

James J. Macklin and La Roy S. Gove, for libellant.
Edward K. Jones and Joseph P. Nolan, for claimant.

ADAMS, District Judge. This action was brought by Albert H. Hastorf, the owner of the scow Admiral, to recover the damages caused to her by swells of the steamship La Savoie, in the ship channel between the Romer Shoal and the West Bank Light, on the 18th day of May, 1906, about 10:50 o'clock P. M. The defence was the usual one in such cases, that the claimant had no knowledge of the fact of the scow being in the vicinity and a denial of all the allegations of negligence, including those that she ran too close to the tow and proceeded at too high a rate of speed, which created a large and dangerous swell.

The testimony showed that the tow consisted of two scows, which were being taken by the tug Samuel Bouker to the dumping grounds outside of the Sandy Hook Lightship to discharge their loads of dirt. The Admiral was in the rear of the tow and close to the other scow, there being but a space of about 1½ feet between them. A hawser of 120 fathoms in length ran from the tug to the first scow. The tide was ebb and the weather fair. The steamer was coming in from sea on one of her regular trips from France.

A disputed point is the place where the vessels passed each other. The libel alleged between the Romer Shoal and the West Bank Light. The libellant's testimony is to the effect that the place of passing was about opposite Norton's Point, which is about 2 miles further north. At the latter place there is a navigable channel about 1½ miles wide, while at the former the channel is less than ½ a mile wide, and it is claimed by the steamer only about 1,200 feet wide for a vessel of her draft of 26 feet. The only apparent importance of passing at the different points, is the width of the channel and, if the testimony of the libellant is correct, as tending to show that the steamer was considerably to the westward of a course she would be justified in taking under the Narrow Channel rule. The Sandy Hook pilot in charge of the steamer said that the tow was encroaching upon the side of the channel which belonged to the steamer but his attention was not called to the matter for about six months after the accident and cannot be depended upon.

The master of the tug testified that he was taking the tow down the right hand side of the channel and the steamer passed him, proceeding in the middle of the channel, about 200 feet off, going at a high rate of speed, about 16 or 17 knots, and created a swell which caused the tug to jump around and him to expect that the tow's lines would part, but he did not slow or stop because he deemed it better to keep on pulling to keep the boats of the tow apart. The steamer, as it appeared from her testimony and log, ran the distance from just outside of the Sandy Hook Lightship to Quarantine, about 15 miles, in a trifle over an hour and therefore must have been going about 12 miles an hour even considering the slowing and stopping, said to have been ordered.

The damage to the libellant's boat was not, in my judgment, caused by the steamer's speed but by the way the tow was made up, the boats being fastened so that they were not in condition to resist swells that would in all probability be encountered. If there had been more space between the boats, it is likely that the damage would not have been received. It was doubtless the result of the close passing of the vessels under the circumstances. The steamer would not know as well as the tow that special caution would be required in proceeding and when the agreement for going to the right was made, it was obvious that a close passing would ensue. I am unable to perceive any fault on the part of the steamer.

The libel is dismissed.