THE ST. PAUL.

THE NONPAREIL.

(District Court, S. D. New York. May 28, 1909.)

SHIPPING (§ 81*)—TOWAGE (§ 11*)—NEGLIGENT NAVIGATION—INJURY TO TOW—
NEGLIGENCE OF TUG.

Swell damage to scow in tow of a tug on a hawser near the West Bank
Light, lower New York Bay, *held* to have been caused by the navigation
of the St. Paul and other steamers in that vicinity, but that the St. Paul
was not liable; the injury sustained by the scow being the result of an
improper make up of the tow by her tug, in that the boats were fastened
within four or five feet of each other.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 345; Dec. Dig. §
81;* Towage, Cent. Dig. § 15; Dec. Dig. § 11.*]

(Syllabus by the Judge.)

In Admiralty.

Carpenter, Park & Symmers, for libellant.

Robinson, Biddle & Benedict, for the St. Paul.

Wing, Putnam & Burlingham, for the Nonpareil.

ADAMS, District Judge. This action was brought by P. Sanford
Ross, Incorporated, the owner of the scow S. 2, to recover for the
damages she suffered by reason of swells of the steamship St. Paul,
encountered on a voyage to sea on the 29th of August, 1908. There
were two scows of the same character in the tow fastened close to-
gether, 4 or 5 feet apart, in tow of the tug Nonpareil on a hawser of
about 75 fathoms, the S. 2 following the S. 1. The tow was pro-
ceeding through the lower bay, on the way to the dumping ground
outside. The tide was ebb, the weather clear, with little wind. The
St. Paul was bound from sea to New York, and when the tow was
slightly to the south of Craven Shoal Buoy, the steamer was seen
coming up by West Bank. She passed the tow 300 or 400 feet to
the port just above that light. It is alleged that in passing, the St.
Paul created a heavy displacement wave and swell which threw the
other scow upon the S. 2, doing damage to the latter, claimed to
amount to $1,600. The tug was also alleged to be in fault for making
up the tow of the scows by fastening them so close together.

The steamer and tug answered, each denying any fault upon its own
part and alleging that the other was solely to blame.

The steamer's testimony shows that she was rounding the South
West Spit at 12:41 o'clock, and arrived at Quarantine at 1:10 o'clock.
If this meant the upper Quarantine, she must have covered a distance
of at least 8 nautical miles in 29 minutes, notwithstanding a strong
ebb tide, estimated in the testimony at 4 or 5 knots, but was probably
much less, and notwithstanding also that she slowed for about 3 min-
utes in coming up to West Bank. The lower Quarantine, however,
was doubtless meant because the steamer's log has a subsequent entry
showing the passing of the Narrows at 1:24, 14 minutes later than
the time she reached Quarantine according to the 1:10 entry.

The steamer claims that she was not going at a speed in excess of 10 miles an hour when off the West Bank Light, because she had reduced her speed in that vicinity. This seems to be true. There can be no doubt, however, that she did, in conjunction with that of other steamers in the vicinity, create a swell which proved dangerous to this tow and caused another in the neighborhood to break up. There is no detailed information about the make up of the latter but it appears that the boats of this tow were fastened so closely together that they were liable to be injured by almost any swell.

The facts in this case bring it within the ruling in La Savoie (D. C.) 157 Fed. 312.

The libel against the St. Paul is dismissed. The libellant is entitled to a decree against the Nonpareil, with an order of reference.