## THE FAVORITA.

District Court, E. D. New York.
July 3, 1930.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for libelant.

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for respondent.

INCH, District Judge.

Libelant, owner of the barge Ruth, sues the steamship Favorita, on the ground that the steamship damaged the Ruth by means of swells negligently caused to hit against the barge.

The affair occurred off Governors Island on July 28, 1924. The libel was not filed until April 23, 1925.

While the taking of testimony on behalf of the steamship appears to have been delayed until February 14, 1930, it is very pos-

sible that, as in many such cases, the officers of the offending vessel were never aware of passing or injuring any tugs and tows in the crowded harbor of New York City.

The issue is one of fact. Only a brief reference to the law is necessary.

█ "Both the steamer and the tow had a right to navigate the river; it being the duty of the tow to meet the ordinary risks of navigation and of the steamer not to injure a tow so constituted by her swells." The Robert Fulton (C. C. A.) 187 F. 107, 108.

█ "The boat causing the injury must be held responsible for any failure to appreciate the reasonable effect of its own speed and motion through the water at the particular place and under the particular circumstances where the accident occurred." The Chester W. Chapin (D. C.) 155 F. 854, 859.

█ The above case is also an authority for the statement that officers of a steamship must use reasonable judgment and care to avoid an accident of this kind, and that the tow, if properly managed and in proper shape, has the right to assume that reasonable precautions to avoid excessive swells will be taken, and is under no obligation to warn the steamer, if the tow was in a proper place and being navigated in a proper manner.

█ The duty also exists to avoid making up a tow in such a manner as to invite possible injury from ordinary and reasonably to be expected swells in a busy place like New York Harbor. Also see The St. Paul (D. C.) 171 F. 606. La Savoie (D. C.) 157 F. 312.

In other words, barges towed in New York Harbor, with its large and small steamers, its ferryboats, and general traffic, must expect to meet swells and other ordinary and reasonable disturbance of the water, and no liability exists for damage done from such causes, unless, by a fair preponderance of evidence, the damage is shown by libelant to have been proximately caused by negligence of those operating the other vessel.

This brings us to the question of fact in this case.

█ The Favorita was one of the small steamers using this harbor. She was 275 feet long, 33 feet wide, schooner rigged, with a clipper bow. Her draft was 15 feet 6 inches aft, 11 feet 6 forward. Her gross tonnage 1,700 tons.

At the time in question she was carrying a cargo of bananas, and she also carried a few passengers. She had three boilers which gave her a maximum speed of about 14 knots. At the time in question she had but two boilers working which reduced her speed to about 11 knots. She had but one propeller.

There is some testimony about the size of the waves that she would make, there being a dispute as to whether a wave was a swell or not, a discussion which is not necessary to continue.

Suffice it to say that about 9 o'clock in the morning, of a clear day, with no unusual weather conditions, she had left Quarantine and was proceeding up towards her slip in the East River and when about off Governors Island she met and passed libelant's barge in tow of the tug Diamond S. No. 2.

This tug had in tow two barges, one behind the other. The one nearest to the tug was the barge Fulton which was being towed on two hawsers of 12 or 15 fathoms. She was about 2 feet lower than the following barge Ruth, which belonged to libelant. These two barges were about 4 or 5 feet apart.

The Ruth had a rake bow and stern and was being towed stern first. She had two 4½ inch lines to the Fulton, port and starboard. Her master, Babich, whose testimony was taken by deposition, was on board with his family. The Ruth was a covered barge with a load of coca beans.

According to this master the tug and tow were about 200 to 300 feet off Governors Island when he saw the steamship Favorita coming up in the same direction, about a mile off, yet he did nothing to avoid what subsequently occurred, and which might reasonably be expected to occur, until the steamer was about 100 feet away. At least, that is the way that I read his deposition. Elsewhere in his testimony he mentions the distance he thinks the steamer was in passing. Daugherty, the captain of the tug Diamond S. says the Favorita passed between 75 and 100 feet away.

While I do not mean that it was necessary to have a lookout on the stern of the tug, yet there was none, and the captain of the tug "didn't notice the Favorita until she was almost abreast of us and the swells did not arrive until later." "The Favorita must have been 300 feet ahead of her when the swells came."

It seems plain enough that the master of this barge neglected to slack his lines until it was too late, although he was well aware of what was likely to happen from even ordi-

nary swells from this steamer. Also as soon as the captain of the tug saw the steamer abreast, "he happened to look behind and slowed down."

This action failed to keep the tow as taut as possible, and with the carelessness of the master of the Ruth, when the swells came, she being the higher of the two barges and with a rake stern, she rolled up and towards this lower barge, the Fulton, which in turn came up and hit under this rake stern, at one corner, doing damage to the rail, the wearing piece, and top planks.

There is no dispute that damage was done in this manner, and there likewise can be no dispute but that, provided the inconsistencies in the testimony of Babich, master of the Ruth, are reconciled, he proceeded to slack one line at a time and thus one end of the Ruth was nearer the Fulton, at the time of the contact, than the other. This indicates that, if both lines had been slackened within the ample time allowed, there would have been no contact whatever in spite of the slowing down of the tug. The captain of the tug "thought the barge captains would slack their lines" and undoubtedly thought they had done so. Babich, of the Ruth, had seen this vessel coming up from a considerable distance away.

I am unable to find any substantial proof that swells from the Favorita were excessive. There were no lines broken. The captain of the tug was not aware of any damage. The speed of the Favorita was not shown to be excessive or careless. Taking into consideration the size of the steamship and all the surrounding circumstances, she appeared to have been navigated with ordinary care and was rightly using that portion of the stream in which she was going.

Bearing in mind the burden of proof resting on libelant and the necessity of such tows to expect ordinary swells and disturbances, it is my opinion, and I so find, that this damage was occasioned, not by the carelessness of those in charge of the steamer, but by those in charge of the tow, particularly the master of the barge Ruth, who had failed to use reasonable care to slack both his lines in the ample time that existed in which to do so, with full knowledge of the presence of the steamer, her course, and what was reasonably likely to be occasioned by her passing.

This being so, the libel should be dismissed.