THE ASBURY PARK.

(District Court, E. D. New York. June 7, 1905.)

SHIPPING—INJURY TO TOWS FROM SWELL—NEGLIGENT NAVIGATION OF STEAM-
ER.

A large steamer passed a tug with two mud scows in tow in New York
Harbor at a distance of from 300 to 500 feet, and caused such a swell
that the scows were thrown against each other and one was injured. It
was shown that when the speed of the steamer was properly reduced
and when she passed at a proper distance from a tow she produced no
injurious swell. *Held*, that the fact that she did so on this occasion
showed that she was not navigated with proper care, and that she was
liable for the injury caused.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 345.]

In Admiralty. Suit for injury to scow.

Peter S. Carter, for libelant.

De Forest Bros. (R. D. Benedict, of counsel), for claimant.

THOMAS, District Judge. The tug Brown was going to sea,
having in tow the mud scow McGirr No. 22, and, eight or ten feet
aft thereof, the scow No. 38E. When in the middle of the channel,
and 1,500 to 2,000 feet below the fort at Governor's Island, the
swells of a steamer passing on the tow's starboard side so disturbed
the scows that the stern of scow No. 22 got under the timber across
the bow of No. 38 and lifted it, and for such injury the libel is filed.

The master of scow No. 38 was not produced, as he was in Cali-
fornia. Pirro, master of No. 22, testified that a steamer "going
rather fast" passed the tow 200 or 300 feet away, and "made the
sea big, swell, and it went under the stern of the scow 38." Erick-
son, captain of the tug, says that the Asbury Park passed the tug
400 or 500 feet off; that she was going about 12 miles an hour, al-
though he would not swear that she was going more than 10
miles; that when he looked back the scows were "jumping in the
sea, in the swell," and that the steamer was then 2,000 feet aft the
tow; and that, using glasses, he saw her name under the stern.
The captain and pilot of the steamer state that the name is under
the fantail, and that when the propeller is in motion it would be
very difficult, if not impossible, to see the name at a considerable
distance. The captain of the tug places the accident between 3:30
and 4 p. m. Anderson, the engineer of the Brown, confirms the
captain's statement that the tug slowed down, and that shortly he
got a bell to stop and to go ahead again, and that as he went about
he did not see the steamer, but did see the swells breaking all over
the scows. The claimant's witnesses, Braisted, the captain, and
Martin, the pilot, of the Asbury Park, gave evidence to the effect
that the Asbury Park left Atlantic Highlands at 2:33 p. m., and
reached the pier in New York at 3:35 p. m., passing Governor's Is-
land about 3:28. Neither of them have any recollection of the tug
and scows or of the accident. They state that in the neighborhood
in question, before reaching such a tow, and when two, three, or

four lengths away therefrom, they customarily reduce their full speed of 18 or 19 miles an hour to 8 or 10 miles an hour, and pull away as far as they can get from her, and that with such speed the swells are not injurious to tugs and tows.

The evidence establishes (1) that swells did affect the dumpers so as to cause the injury; (2) that the swells were caused by the Asbury Park; (3) that if the speed of the Asbury Park is properly reduced, and if she passes at a proper distance from a tow, she produces no injurious swell. As she did cause an injurious swell, it is inferable that she was not observing the customary care which she had theretofore deemed requisite for safety.

The claimant bases an argument upon discrepancies in the statements of the libelant and its agents and servants as to time. But experience teaches that misstatement of time and distance is a common error, and departure from accuracy in such regard in this case is not sufficient to override the evidence that the offending vessel was the Asbury Park.

The libelant should have a decree.