ROSS v. CENTRAL R. R. OF NEW JERSEY.

(District Court, S. D. New York. July 9, 1906.)

1. SHIPPING — INJURY TO TOWS FROM SWELL — NEGLIGENT NAVIGATION OF STEAMER.

The owner of a large steamer navigating New York Bay and harbor is liable for injury caused by her swell to scows or similar vessels being lawfully and properly navigated in tows, where it is shown that when proceeding at full speed she causes a swell dangerous to such tows within a distance of 1,000 to 1,500 feet, but that by reducing her speed to a reasonable degree such swells may be avoided.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 345.]

2. SAME—EVIDENCE.

In an action to recover damages for injuries to scows in New York Bay and harbor on several occasions, alleged to have been caused by swells created by respondent's steamer, which made several trips each day in such waters, where libelant's witnesses were unable to fix the times of such injuries with certainty, but identified the steamer from her appearance, such evidence is not overcome by entries in the steamer's logbook showing that in some cases she was going in the opposite direction from that testified to, or was not in the vicinity at the precise time named by such witnesses in accordance with their best recollection.

In Admiralty. Libel in personam for damages alleged to have been done by the steamer Asbury Park, owned by respondent, to several scows of libelant, on different occasions by the heavy swells created by the rapid passage of this steamer while navigating the upper and lower New York harbors or bays, and in passing the Narrows from the one to the other. The respondent on the trial and in its brief says:

"The eight several causes of action were united in one suit against the respondent in personam, pursuant to an understanding had between the parties for their mutual convenience. No question is raised as to the propriety of such practice."

Benedict & Benedict, for libelant.
De Forest Bros., for respondent.

RAY, District Judge (after stating the facts). The evidence shows to my satisfaction that the steamer Asbury Park, running on regular trips from Pier 8, city of New York, to and from Atlantic Highlands, especially when running at speed with the tide, under ordinary conditions causes very heavy swells—swells dangerous to scows in tow of steam tugs or lying still, when within reach or the influence of these swells. She is the largest and most speedy of three steamers run by defendant on this line in these harbors, and quite powerful. Whether these swells are the result of her speed, or of her speed and construction combined, does not definitely appear, but probably they result from both. In any event, it is not disputed that she causes them when at speed, and that they are dangerous to and do damage to loaded scows lawfully and properly in and navigating these waters when properly attached together and handled. This is the effect of these swells made by the Asbury Park at ordinary speed on scows at a distance of from 1,000 to 1,500 feet away. When passing at a closer distance, these swells have caused these loaded scows to overturn—"turn turtle." When the speed of the Asbury Park is reduced to a reasonable degree, these dangerous or injurious swells or surges are not created by her. The evidence, therefore, shows that by careful navigation the respondent may avoid these injuries. It may be regarded as settled that a steamer of this character under such conditions in these waters is not run or navigated with proper care when navigated as above described, or when run at such a rate of speed in the neighborhood of such smaller craft as these scows as to create these heavy and dangerous swells. The Asbury Park (D. C.) 138 Fed. 617, affirmed (C. C. A.) 142 Fed. 1037; The As-

bury Park (D. C.) 138 Fed. 925. Ocean steamers passing these scows in these waters under their own steam do not create such dangerous swells. In 138 Fed., at page 618, it was held:

"The evidence establishes: (1) That swells did affect the dumpers so as to cause the injury; (2) that the swells were caused by the Asbury Park; (3) that if the speed of the Asbury Park is properly reduced, and if she passes at a proper distance from a tow, she produces no injurious swell. As she did cause an injurious swell, it is inferable that she was not observing the customary care which she had theretofore deemed requisite for safety."

The evidence shows that the Asbury Park was accustomed to pass these scows at full speed, and it seems clear she must be held in fault for not slackening her pace, so as to reduce the surges caused by her passage to the safety limit. The evidence as to each and every occurrence set forth in the libel shows that some damage was done to the scow of the libelant mentioned therein. This damage was more serious in some cases than in others. The main contention on the trial was the identity of the steamer doing the damage. Libelant's witnesses claim to have identified the Asbury Park as the one creating these swells or surges, and they say no other vessel that could have done this was near at the time. The size, shape, or general build, speed, and color of awnings, etc., were in some cases relied upon as means of identification. Many of the witnesss had seen the Asbury Park at close quarters, and knew her by name, having read it thereon. It is quite probable and credible that such a steamer navigating these harbors daily, and making several trips each day, would be readily recognized from her general appearance by those familiar with such craft. There is no evidence there was any other steamer navigating these harbors at this time of her size, general build, and appearance, and liable to be mistaken for her. The witnesses for the libelant speak of having met her or of having passed her at the times the injury was done at about an hour named, but except in one, or, possibly, two, instances, they do not attempt to fix the hour with any certainty. In some instances they state that the Asbury Park was going towards New York when the injury was done, and in others that she was making towards the Highlands. The respondents produce the logbook of the Asbury Park, and from it show that in some of the instances named by libelant's witnesses she was in fact proceeding in the opposite direction. From this it is argued that it must have been some other vessel that created the swells or surges and did the damage. If the witnesses of the libelant had made memoranda at the time, instead of relying on memory, or it had been shown that the injury alleged could not have been caused by a vessel going in the direction of the Asbury Park was proceeding as shown by "the log" of the Asbury Park, this evidence would be more potent and convincing. The Asbury Park made the trip from Pier 8 to the Highlands, 17 nautical miles, in 67 minutes usually, and the return trip in about the same time. She made no intermediate stops except for special cause, in which case it was noted in the logbook, as was any material slackening of speed for special reasons. Her rate of speed was not uniform, as it stands to reason that in leaving Pier 8, for instance, she would proceed slowly and carefully if the

Harbor was crowded at the time in that vicinity, and then go more rapidly as the way became entirely unobstructed. For these and other reasons it could not and cannot be stated just where she was at a given time, unless when at her pier or at the Highlands, and on the occasion of special stops and delays. The evidence of libelant's witnesses, who appeared fair and honest, is not to be discredited because the log of the Asbury Park would make it appear, assuming she proceeded at a uniform rate of speed, that she was not at or near the place of the injury when it occurred, assuming such injury was sustained at the precise time named by libelant's witnesses according to the best of their recollection. Recollection may have been at fault anywhere from 15 minutes to an hour, and, taking the times of arrival and departure for the Asbury Park from her log, and allowing for tide and obstructions in some cases, and errors in recollection, we see at once that the variations in time are not of great weight. So the witnesses may be easily and honestly mistaken as to the direction in which the Asbury Park was proceeding. The surge or swell would be the same in either case. The witnesses would not have her direction impressed on their memory unless there was some special event or circumstance to call that particularly to their attention. But where the discrepancy is so great in time as to show that the Asbury Park could not have been at or near the place of injury at the time the evidence adduced by the libelant shows it was or must have been done, then it is the duty of the court ot exonerate her from fault; for it was incumbent on the libelant to show an injury to his scow from the improper navigation or management of the Asbury Park at near the time mentioned in the libel. Where the evidence shows the time when and the place where the injury was done, and that the Asbury Park was not there or in that vicinity, a perfect defense is shown. But it is not sufficient, in the face of positive identification by libelant's witnesses, to show by the log of the Asbury Park that she may not have been there, or that under ordinary conditions she probably was not there, so as to be the author of the swells that did the damage. In The Asbury Park (D. C.) 138 Fed. 617, at page 618, Judge Thomas aptly said:

"The claimant bases an argument upon discrepancies in the statements of the libelant and its agents and servants as to time. But experience teaches that misstatement of time and distance is a common error, and departure from accuracy in such regard in this case is not sufficient to override the evidence that the offending vessel was the Asbury Park."

The respondent gave no evidence whatever as to the speed of the Asbury Park on these occasions; that those in charge of her did or did not observe these scows, or pay any attention to them, or slow down as she passed, although she passed close to some of them, and libelant's witnesses say she passed at her usual and regular rate of speed. Libelant was free from fault, as these scows were properly attached in the tows, and properly and carefully managed.

The libelants have established their case except as to the matter set forth in paragraph 9 of the libel, which could not be proved because of the death of the witness.

The libelant will have a decree in the usual form.