## THE PORTCHESTER.

### THE PRISCILLA.

(Circuit Court of Appeals, Second Circuit. March 7, 1927.)

No. 201.

1. Towage ⊂⇒15(2)—In absence of explanation, cut in tug's hawser must be assumed to have existed when tow was made up.

In absence of explanation by tug as to when cut in hawser, which left it with about two-thirds of its strength, was made, resulting in loss of tow when it parted, assumption is that cut existed when tow was made up.

2. Towage ⊂⇒15(2)—Tug is bound to show that defect in hawser could not have been discovered by reasonable inspection.

Though tug is not insurer of its hawsers, if they are in fact unsuitable for their purpose, she is prima facie at fault, and is bound to show that defect could not have been discovered by reasonable inspection.

3. Towage ⊂⇒15(2)—Prima facie case of tug's fault for loss of tow on parting of hawser held not overcome by evidence.

Prima facie case of tug's fault, established by showing that loss of tow occurred on parting of tug's hawser, held not overcome by evidence.

4. Towage ⊂⇒15(2)—Evidence held insufficient to show that swells of steamer passing at excessive speed caused tug's hawser to part, with loss of tow.

On libel against tug for loss of tow, when hawser parted, in which libelee impleaded a large steamer which had passed the tow at excessive rate of speed, evidence held insufficient to show that steamer's swells caused hawser to part, in view of tug's failure to notify steamer of survey of barge, or to make claim until six months after accident.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by Robert Woodburn against the steam tug Portchester, her engines, etc., claimed by the Red Star Towing & Transportation Company, in which said claimant impleaded the steamer Priscilla, her engines, etc., claimed by the New England Steamship Company. From a decree holding both vessels at fault, and dividing damages, the New England Steamship Company appeals. Reversed, and tug alone held at fault.

Appeal from a decree of the District Court for the Eastern District of New York holding equally liable the tug Portchester and the steamer Priscilla for the sinking of

the libelant's scow, Hayward. The Priscilla appealed.

On the morning of October 21, 1922, the tug Portchester was towing the barges Hayward and Maurice R. through Hell Gate in clear weather on a flood tide. The tow was made up on a hawser about 150 feet long, with a bridle; the Hayward being on the port side, and the Maurice R. on the starboard. At some point between Hallett's Point and Negro Point the hawser parted, and the tow went adrift. Before the tug could make fast another hawser, the Hayward took a strand near Steep Rock, just below Hell Gate Bridge, and her injuries were such that she sank about 300 feet east of the red buoy on the Middle Ground, before she could be beached. The Hayward sued the Portchester, among other things, for a defective hawser, and the Portchester brought in the Priscilla for passing the tow at unwarranted speed. The Priscilla, a large Sound steamer, passed through Hell Gate on the same morning bound for New York. She passed Hunts Point at 6:13 and Hell Gate at 6:26, an average speed of 17 miles an hour, passing the tow at some place between those points. It was the tug's story that swells caused by her speed put an undue strain upon the hawser, which parted, and so put the tow adrift.

The District Court held that one strand of the tug's hawser had been nearly or quite cut through, and that it was therefore improper for towage, and that the Priscilla's speed caused the scows to jump, and put a heavy strain upon the hawser, which it was unable to bear. It therefore held both vessels at fault and divided the damages.

Robert S. Erskine and Henry P. Elliott, both of New York City, for the Priscilla.

Chauncey I. Clark, C. B. Manley O'Kelley, and Burlingham, Veeder, Masten & Fearey, all of New York City, for the Portchester.

Horace L. Cheyney, of New York City, for the barge.

Before MANTON, HAND, and SWAN, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] Before considering the evidence upon the steamer's fault, we pause to say that the tug's liability is in any case established. While it may be true that one of the hawser's three strands was not quite cut through, it is clear from Bagger's uncontradicted testimony that so little was left as to give it only two-thirds of its strength. In the absence of any explanation by the tug, in whose custody the hawser remained, as to when and how this cut was made, we must assume that it existed when the tow was made up. Nor are we willing to speculate upon its visibility by a proper inspection.

[2, 3] The tug's mate and the bargee swore, it is true, that it was "all right" and a "good-looking line"; but that is far from enough to exonerate the Portchester. While a tug is not, of course, an insurer of its hawsers (The Sunnyside, 251 F. 271 [C. C. A. 2]), if they are in fact unsuitable for their purpose, she is prima facie at fault (The Washington Irving, 250 F. 797 [C. C. A. 2]), and she is bound to show that the defect could not have been discovered by a reasonable inspection. It appears to us too plain for argument that, if the cut had existed at the time, it should have been so discovered. We think, therefore, that the prima facie case was not met.

[4] The case against the Priscilla depends upon whether it was in fact her swells which parted the hawser, since it is conceded that, if so, her speed was too great. That case depends on the testimony of the master, the mate, and the cook of the tug, which would, we agree, under ordinary circumstances be sufficient. Yet it must be remembered that a steamer is at a great disadvantage on the issue. She passes many tows daily on every trip in the crowded waters of this harbor, usually without incident. Unless she chances to see the damage caused, nothing draws her attention to any exception from her daily routine. She can scarcely dispute what happens after she has passed, and the absence of any contradiction from her is therefore to be expected. All that she can usually do is to say, as here, that she was aware of no unusual incident.

It is significant in our opinion that the Hayward's bargee says nothing about the steamer in his account of the incident. All he noticed was a sudden sheer, very common in these waters, and the immediate parting of the hawser. It is true that at the time he was in his cabin cooking breakfast, but there was a forward window through which he was looking, and he neither saw any steamer nor felt the barge jump to her swells. It appears to us scarcely credible that, if swells had immediately preceded the parting, he would have failed to connect the two, or have noticed nothing but a sheer. His testimony, being in this regard impartial, weighs more than that of the tug's crew, for obvious reasons.

However, we are not prepared to say, if the proof rested there, that we should have so decided a conviction as to overrule the decision of the District Judge, who saw the witnesses. The subsequent conduct of the tug

and her owners seems to us to turn the scale. We hold it self-evident that, had the steamer in fact done the damage, the tug's crew would have at once become vocal on that score. They knew nothing of any defect in the hawser, and they had lost the barge. Prima facie they were chargeable; in fact, they were not. The steamer alone was at fault. We think it moderate to say that, given such a situation, it is extremely improbable that the master should not have so reported the event to his owners, and we think it scarcely less likely that no claim should have been made within six months after the loss occurred.

The master at first swore that he made a written report to his owner that a steamer had caused the trouble; but this was untrue, and his recollection was plainly of no value that he had even spoken of it to them. There is not an iota of evidence from the owners that he ever so reported to them, and we can only conclude that he did not. This is strongly corroborated by the fact that the tug gave no notice to the steamer of the survey of the barge, at which she attended. A most significant admission is that at the time she knew nothing of the steamer. Finally, it was only at the end of nearly six months, during two of which the suit was actually pending, that the steamer finally learned that she was charged.

In the face of all this, coupled with equivocal testimony of the bargee, to put it most favorably, we cannot believe the story of the crew. The strong temptation and the slight chance of detection combine too persuasively with the subsequent silence to satisfy us that the fact was as they say. Some contemporaneous declaration from the master, implicating the steamer, was in our judgment almost a certainty. None appears, and we know too well by experience that in such cases the bare word of watermen is not a strong reed on which to lean.

Decree reversed, and tug held alone at fault.