## THE HENDRICK HUDSON.
No. 12842.

District Court, E. D. New York.
Dec. 8, 1932.

See, also, 1 F. Supp. 220.

Crane, Inness & Arnold, by Joseph K. Inness, all of New York City, for libelant.

Hatch & Wolfe, by C. W. Wolfe, all of New York City, for claimant-respondent.

CAMPBELL, District Judge.

This suit was brought to recover for damages alleged to have been caused to a moored vessel, the Commercial Guide, by the steamer Hendrick Hudson, which, moving at high speed, caused the Commercial Guide to surge forward and back, part lines and damage gangway, and on another occasion part a line.

I find the facts as follows:

At all the times hereinafter mentioned and at the time of the trial, the libelant was a corporation organized and existing under and by virtue of the laws of the state of Delaware, with an office and principal place of business in the borough of Manhattan, city, county, and state of New York.

At all the times hereinafter mentioned, the libelant owned, operated, and controlled the steamship Commercial Guide.

At all the times hereinafter mentioned, the respondent Hudson River Day Line was and still is a corporation organized and existing under and by virtue of the laws of the state of New York, with an office and principal place of business at West Forty-Second Street pier, borough of Manhattan, city, county, and state of New York.

At all the times hereinafter mentioned, the respondent Hudson River Day Line owned, operated, and controlled the steamer Hendrick Hudson.

At the time of the commencement of this action, the steamer Hendrick Hudson was within the jurisdiction of the United States and of this court.

At all times up to the happening hereinafter described, the steamship Commercial Guide was tight, staunch, strong, and in all respects seaworthy, except that the line that parted on August 10, 1931, was a spliced line that had previously parted, and was not equal to the strain on the other seven lines.

At 4 o'clock p. m. daylight saving time, on August 8, 1931, the steamship Commercial Guide arrived on a voyage from Leningrad, Russia, with a cargo of 3,250 cords of pulpwood, about one and one-half tons to the cord, having laid at anchor in the river overnight at Kingston, N. Y., from which place she had proceeded to Albany, N. Y., and made fast to the Delaware & Hudson Railroad dock, which runs along the side of the river.

The steamship Commercial Guide was made fast with her port side to the dock bow up the river, with three bow and three stern lines, one bow breast line and one stern breast line, all of 7 or 8 inch manilla, and a one and one-half inch wire spring line.

The lines were drawn tight with the aid of the winches.

The lines were all good lines, some had been purchased in February, and the remainder in June of that year.

A gangway was also rigged from a spar extending out amidships on the port side of the vessel leading forward to the dock along the side of the vessel, and the gangway was equipped with rollers.

At 6:29 o'clock p. m. daylight saving time on that day, and before any cargo had been discharged by the steamship Commercial Guide, the Hendrick Hudson passed at a good speed, without slowing down before the damage was inflicted, and the suction caused by her speed through the water pulled the Commercial Guide away from the dock and caused her to surge along the dock, and part four lines, two 7-inch manilla, one 8-inch manilla, and one 1½-inch wire line, and break her gangplank.

The chief officer of the Commercial Guide had never been at the port of Albany before, and expected that the Hendrick Hudson would slow down, and her speed was not so high as to make him apprehensive of danger until it occurred.

On the 10th day of August, 1931, at about 6:20 o'clock in the afternoon, the Hendrick Hudson again passed the Commercial Guide going up toward Albany at good speed, and did not slow down, although on this occasion the Commercial Guide sounded a danger signal when she saw the Hendrick Hudson coming. On this occasion the Commercial Guide was caused to surge, but parted only one 7-inch manilla rope stern line, and not a new line, but one that had parted before and been spliced.

The witnesses for the Commercial Guide were unable to estimate the speed of the Hendrick Hudson in miles, but said that she was going faster than other boats that passed the Commercial Guide, including the night boats, from which she received no damage.

▮ On the facts as found, the fault of the Hendrick Hudson for the damages to the Commercial Guide, on August 8, 1931, is established. As to the damages on August 10,

1931, which consisted solely in parting only one of a number of lines, and the one so parted being a spliced line which had previously parted, the liability of the Hendrick Hudson was not established.

That the Hendrick Hudson was not moving through the water at full speed seems to me to be clearly established, as is also the fact that she was not moving through the water at the slowest speed she could travel.

It is also clearly established that the suction of the Hendrick Hudson, at the speed she was moving through the water, was sufficient to and did cause the Commercial Guide to surge and part her lines and break her gangway, and for this she was liable.

The lines were good lines, properly made fast, and sufficient to properly moor the vessel to the dock, and the gangplank was properly rigged and was not between the rails of the track on the dock.

Therefore it is not a question of the speed in miles, but that the speed was too great for the safety of a properly moored vessel.

The evidence offered on behalf of the respondent does not convince me that the Hendrick Hudson, on August 8, 1931, was moving at the lowest speed consistent with her safe navigation, but that she was moving at a speed too high for the safety of the Commercial Guide in a narrow channel, and was at fault in not reducing her speed, and that the damages were caused to the Commercial Guide solely by the speed of the Hendrick Hudson.

The parting of the line on the 10th of August, 1931, does not seem to me to be chargeable to the Hendrick Hudson, as only one of eight lines parted, and this was a spliced line that had previously parted, and was not capable of sustaining the strain imposed on the other seven lines.

I find as conclusions of law:

That the respondent, its agents and servants, on the 8th day of August, 1931, carelessly and negligently navigated the Hendrick Hudson at a speed too high, under the conditions there present, and thereby created a suction which caused damage to four lines and the gangway of the steamship Commercial Guide, which was properly moored at a dock, and that for such damage the respondent is wholly to blame.

That the libelant and those for whose actions it was responsible did not negligently cause or in any way contribute to the damages received by the steamship Commercial Guide, on August 8, 1931, and is wholly without blame.

That the respondent is without blame for the damage to the line of the steamship Commercial Guide on August 10, 1931.

That libelant is entitled to a decree against the respondent for the damages received by the steamship Commercial Guide on August 8, 1931, with interest and costs and the usual order of reference, and the respondent to a dismissal of the libel as to the damages to the line of the Commercial Guide on August 10, 1931, but without costs.

That a decree may be entered in accordance with this opinion. Settle decree on notice.

If this opinion is not considered a sufficient compliance with Rule 46½ of the Rules in Admiralty (28 USCA § 723) proposed findings of fact and conclusions of law in accordance with this opinion may be submitted for the assistance of the court, as provided by the rules of this court.