**Hector V. DUFRENE, Libellant,**

v.

**THE Tug DIVERSITY, her engines, etc.,
and Twenty Grand Towing, Inc.,
Respondent.**

**No. 3230.**

United States District Court
E. D. Louisiana,
New Orleans Division.

June 12, 1958.

Deutsch, Kerrigan & Stiles, John F. Fox, Jr., New Orleans, La., for libellant.

Lemle & Kelleher, Charles E. Lugenbuhl and Thomas H. Leach, New Orleans, La., for respondent.

J. SKELLY WRIGHT, District Judge.

Libellant is the owner of the Tug Capt. H. V. Dufrene. He alleges that his tug was damaged by excessive wave wash created by the M/V Diversity as that vessel was navigating the Harvey Canal [1] on the early morning of April 14, 1956. At the time the Capt. Dufrene was moored outboard an LSM which in turn was moored to the McDermott dock on the canal.

The Capt. Dufrene is a diesel-powered, single screw, wooden trawler with registered dimensions of 55.5 feet in length, 17.5 feet in breadth, and 7.6 feet in depth. The Diversity is a steel hull, diesel-powered, shallow draft vessel with twin screws and four GMC engines of 1200 HP total. Her registered dimensions are 120 feet in length and 30 feet in width. At the time in question she was traveling light with a mean draft of approximately 2.5 to 3 feet.

The witnesses from the Dufrene testified that they saw, without recognizing, the Diversity proceeding south at a high rate of speed, variously estimated at from 7 to 10 mph, that she passed within 40 feet of the moored Capt. Dufrene, that her wave wash broke the lines of the Dufrene as well as one line on a barge moored forward of that vessel and to the McDermott dock. The deck hand from the Dufrene testified that he was sitting on deck when he saw the Diversity approaching at 9 to 10 mph, leaving a wave wash 6 to 7 feet high. He failed, however, to hail the Diversity or to indicate in any way to her to slow down.

The witnesses from the Diversity, as might be expected, tell a different story.

---

1. The Harvey Canal is a link in the Intracoastal Waterway running generally south from the west bank of the Mississippi River at New Orleans.

They not only deny that the Diversity was proceeding at high speed and creating excessive wave wash, but go further and state that, even at flank speed, because of the shallow draft of the vessel, no appreciable wave wash is created by the Diversity. They testified that the Diversity's speed at the time was from 3 to 4 mph and her wave wash not more than a ripple. To support her position, the Diversity showed that she departed the Harvey Locks at 4:08 on the morning in question and docked at the Intracoastal Terminal, 1.3 miles away, at 4:30 A.M. Her witnesses suggest that if the Dufrene was damaged by wave wash, it was caused, not by the Diversity, but by several other unidentified vessels which only the Diversity's witnesses saw in the area at the time. In any event, the Diversity's witnesses say that the Dufrene was improperly moored with insufficient line and that her improper mooring caused the damage.[2]

Ordinarily, in a case of this kind an admiralty court, in determining fault, is left to choose between the diverse swearing of the members of the crew of the concerned vessels. Vessels leave no tracks and small ones, like those in suit, are not equipped with course recorders or even reliable logs. Fortunately, however, in this case there was produced an independent witness, one A. J. Price, an employee of McDermott who was standing on the barge moored forward of the Dufrene. He testified that the Diversity was proceeding at approximately 10 m.p.h., that the wave wash from the Diversity was so excessive that it broke one of the mooring lines of the barge and knocked him from his feet. He also testified that the Diversity was the only vessel in the vicinity at the time in question, thereby eliminating any doubt which otherwise may have existed with reference to the identification of the Diversity as the culprit. Actually, the Diversity docked several hundred feet south of the McDermott wharf. Immediately after the incident, the Dufrene left her moorings and proceeded down to the Intracoastal Terminal where the Diversity was moored and accused the Diversity of damaging the Dufrene by wave wash.[3] There were explosive denials and the Dufrene retired from the scene of possible combat. This incident was also witnessed by Price.

■■ Excessive speed in a crowded harbor has long been held to saddle liability for damage caused thereby on the offending vessel.[4] A vessel which sees, or should see, other vessels, whether moored or navigating, in a position where damage to such vessels from her swells is likely, must reduce her speed or direct her course away from them.[5] The damage in suit here was caused by the wave wash from the Diversity, which was proceeding at excessive speed in a narrow channel in the proximity of

---

2. This last defense of the Diversity is a makeweight. The evidence shows that the Dufrene was securely moored to the LSM with the customary bow, breast and stern lines of 1¼″ Manila, which was adequate in the circumstances.

3. See The Portchester, 2 Cir., 18 F.2d 75, 1927 A.M.C. 489; Murray Lighterage & Transportation Co. v. Steamtug Perseverance and S.S. Rensselaer, D.C., 1928 A.M.C. 841; Brooklyn & Buffalo Navigation Corp. v. Hudson River Day Line, D.C., 1928 A.M.C. 384.

4. The Washington Irving, 2 Cir., 250 F. 797; Upper Delaware River Transp. Co. v. Sullivan, 3 Cir., 61 F. 220; Nelson v. The Majestic and The Nannie Lamberton,

2 Cir., 48 F. 730; Gabriel Roberts v. Steamship Duchess of York and Canadian Pacific Railway Company, etc., D.C., 1935 A.M.C. 545; McAllister Navigation Co., Inc. v. Steamship New York, Eastern Steamship Lines, D.C., 1933 A.M.C. 618; The Hendrick Hudson, D.C., 3 F. Supp. 317, 1933 A.M.C. 120; Mulqueen v. Cunard S.S. Co., Ltd., D.C., 2 F.Supp. 319, 1933 A.M.C. 462; Dampskibs Aktieselskabet Sekstant v. Malabar Steamship Co., Inc., D.C., 1931 A.M.C. 890; The Chester W. Chapin, D.C., 155 F. 854; The Asbury Park, D.C., 138 F. 925; Smith v. The Monmouth and The Raritan, D.C., 44 F. 809; cf. United States v. Steamship Berengaria, D.C., 1933 A.M.C. 111.

moored vessels. Her failure to reduce speed and adjust her course to prevent damage to those moored vessels constitutes fault and consequent liability for the damage caused by such failure.

Decree for libellant.