## The Sally McDevitt v. The J. W. Paxon.

(*District Court, E. D. Pennsylvania*   May 29, 1885.)

Towage—Tug and Barge—Striking Sunken Wreck—Negligence—Damages.
 The tug in this case was guilty of negligence, and should be held liable for the loss of the barge being towed, caused by striking a sunken wreck, the existence of which was known to the tug's captain.

In Admiralty.

*Henry R. Edmunds*, for libelant.

*Pugh & Flanders*, for respondent.

Butler, J.  Two questions only were presented on the argument: *First*. Did the libelant strike on the sunken "wreck," (the location of which was known to the respondent,) or upon some other obstacle whose existence was unknown?  *Second*. Was the bark properly steered?  After listening attentively to counsel, and reading the testimony submitted, I am satisfied both these questions must be answered in the libelant's favor.

It seems to me quite plain that the striking was upon the "wreck." Notwithstanding the conflict in testimony, the weight of the evidence, in my judgment, sustains this view.  Rodenbush, master of the McDevitt, and Standering, master of the other boat in tow, are clear and positive respecting it.  They knew nothing of the "wreck" until attention was called to it at the time, but they say it was this they both struck.  Standering is entirely disinterested,—the only witness not connected with either party.  The deck hand and engineer of the tug support this view.  A careful reading of their testimony, in the light of surrounding circumstances, seems to make it clear that both vessels struck the same thing.  That the vessel towed at the tug's side struck the wreck is not questioned.  The allegation that the libelant encountered something else, further over to port, finds but feeble support in the evidence.  If such obstruction existed it could readily have been found; and finding it might have been important to this inquiry.  Yet it was not sought for.  It is said that slight obstructions suddenly obtrude themselves in this creek, and as suddenly disappear.  While this is quite probable, it is not probable that so serious an obstacle as that encountered by the libelant, was of this temporary character.  The respondent, being familiar with the existence of the sunken wreck, should have avoided it.

That the barge was not steered directly in the wake of the tug, may be granted.  When the rate of speed at which the vessels were moving, the state of the water, and the shape or form of the channel at or near the point, are considered, it cannot well be doubted that it was impossible she should have been kept directly astern.  The speed was about two miles an hour.  The tide was, I think, turning downward, and the tow was rounding, or had just rounded, a bend in the

creek. The master of the tug says: "We had just come around a turn a short ways when the accident happened. The tug was straightened up, and had been about a minute." That the libelant kept as nearly behind the tug as was reasonably practicable, is shown, I think, not only by her master's testimony, but also by that of Capt. Standering. While the respondent's witnesses testify otherwise, they seem to be plainly contradicted by the circumstances of the case. If the libelant ran off to port, as they say, she could not have passed over the obstruction encountered by the other boat. The fact that she hit the obstruction well to her port side, while the other boat, lashed to the tug, seems to have passed directly over it, shows that she must have been pretty nearly astern of the tug,—as nearly as could have been expected. Her master was on his guard from the start, having provided himself with a new tiller especially adapted to the occasion.

A decree must be entered in favor of the libelant.