## THE KRONPRINZESSIN CECILIE.

(Circuit Court of Appeals, Second Circuit. November 13, 1911.)

### No. 35.

SHIPPING (§ 86*)—INJURY TO VESSELS BY STEAMER'S SWELL—FAULT.

An injury to a tug and tow, consisting of a car float on her side, in New York Bay, from the displacement waves of a passing steamship, which causes the tow to break loose, *held* due solely to the fault of the steamship in moving at excessive speed with reference to the tug and tow; there being insufficient evidence to sustain the claim of contributory fault on the part of the tug.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 343–360; Dec. Dig. § 86.*

Liability of vessel for injuries caused by creation of swell, see note to The Asbury Park, 78 C. C. A. 3.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Long Island Railroad Company, charterer of the tug Patchogue and car float No. 14, against the steamship Kronprinzessin Cecilie, North German Lloyd, claimant. Decree for libelant, and claimant appeals. Affirmed.

For opinion below, see 171 Fed. 574.

Joseph Larocque (Choate & Larocque, of counsel), for appellant.
Burlingham, Montgomery & Beecher (Wm. S. Montgomery and Roderick Terry, Jr., of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. January 14, 1908, about 11:50 a. m., when the tug Patchogue with loaded car float No. 14 on her port side was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bound up the Greenville Channel in the Upper Bay of New York Harbor, heading about northwest, the niggerhead at her bow broke, letting the head line to the tow go and as the tug swung around to the northward, parting the towing line, the stern line, and breaking the bitt on the starboard corner of the float to which the stern line had been made fast. At this time the steamship Kronprinzessin Cecilie, bound from quarantine to Hoboken was just about one-fourth of a mile above the tug and tow. No one on the steamship noticed the tug and tow as she passed, nor had any knowledge of what subsequently happened. There can be no doubt that the steamship's displacement waves were the proximate cause of the accident. Without attempting to fix her exact speed, it is perfectly clear that it was excessive in relation to the tug and tow.

The only question is whether any defect in or insufficiency of the tug's niggerhead or any failure of the master of the tug to take proper precautions to prevent the damage contributed to it. The answer specified no such defenses, but alleged in the most general terms that the accident "was caused or contributed (to) by the negligence and incompetence of the master, officers, and crew of the said steam tug and car float as upon the trial will more fully appear." The testimony is that the lines to the float were made fast and tightened by the winch in the customary way. It may be that, if the niggerhead had not broken, no damage would have been done. But it was not shown to have been insufficient or defective in any respect. It was described at the trial as a hollow cast-iron tube about 9 inches in diameter and 1¼ inches thick. The claimant's freight superintendent examined the tug and float the day after the event, and was shown all the damage done to them. He was a witness, but he made no criticism whatever of the niggerhead, as he manifestly would have done if his inspection of it had disclosed anything to criticise. As for the conduct of the captain of the tug, it appears that, when he felt the displacement waves, he slowed and stopped his engines, and ordered the head line to be slackened. Before this could be done, the niggerhead broke. The District Judge held as a matter of fact that there was not enough time nor enough apparent necessity for casting off to put the master in fault, and we see no reason for disturbing this finding. Decree affirmed, with interest and costs.