## THE LUKE.

## THE ALEXANDER HAMILTON.

District Court, E. D. New York. August 12, 1926.

No. A-7516.

1. Shipping ⟂81(1)—Steamer, passing tow in channel, must use care as to speed known to experienced men to be required.

When a steamer in a channel passes a tow, she is bound to use the care with reference to her speed which as experienced men those in charge of her should have known was required.

2. Shipping ⟂81(1)—Twelve knots an hour held excessive speed for steamer passing tow 350 feet off, in channel shoal at side.

Speed of 12 knots an hour for steamer in passing tow 350 feet off, in channel shoal at side, *held* excessive, rendering her liable for damage to scow in tow from swells caused by steamer.

3. Shipping ⟂86(2⅗)—Under evidence as to swells from steamer injuring tow passed in channel, held, it would be assumed steamer did not slow down sufficiently soon enough.

There being no evidence rebutting the evidence that the swells from steamer, in passing tow 350 feet off, in channel, were the only proximate cause of injury to scow in tow, it will be assumed the steamer did not slow down sufficiently soon enough.

4. Towage ⟂11(4)—Tow, barge in which was injured by swell of passing steamer, held not faultily made up, because of some barges being only 4 or 5 feet apart.

That, in making up a tow of barges in tiers, one of which was injured by swells of steamer passing in a channel, some of them were made fast but from 4 to 5 feet apart, *held* not a fault.

Alexander & Ash, of New York City, for libelant.

Hatch & Wolfe, of New York City, for claimant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City, for respondent.

CAMPBELL, District Judge. On or about the 14th day of June, 1924, the respondent's steam tug Jumbo, bound from Clinton Point to New York, took the libelant's loaded scow Luke in tow at Marlborough. There were a large number of boats in the tow, which was made up in tiers, and the Luke was the port boat in the second or third tier.

On the 15th day of June, 1924, when the Jumbo, with her tow, was off Scarborough, the tide ebb, with a light wind from the northeast, the Alexander Hamilton approached, going in the same direction. The Alexander Hamilton reduced her speed when, as she claims, she was 1,500 yards distant from the tow, but this distance, in my opinion, is not conclusively shown.

The Alexander Hamilton claims that she reduced her speed to 6 miles an hour and barely had steerage way; but my calculation of the distance traveled within the time stated makes the rate about 12 miles per hour. The master of the Jumbo says he felt the Hamilton's pull on the tow some time before her bow came abreast of the tail of the tow, and that he had slowed down to one bell.

The pull described by the master of the Jumbo was undoubtedly the result of suction; but this pull of necessity must have been constant, and could not, in my opinion, have been the cause of the boats of the tow jumping up and down and breaking bitts and lines, as that must have been caused by swells.

The master of the Jumbo does not fix definitely the position of the Hamilton with reference to the tow when it broke up; but the witnesses on behalf of the Hamilton say that swells caused by the Hamilton ran ahead of her and caused the tow to break up before or as the Hamilton came abreast of the tail of the tow. That swells caused by a boat could run ahead of her seems to be contrary to all known laws of physics, and yet the witnesses called on behalf of the Hamilton are positive that they observed such action at that time, and a captain of another steamer, called on behalf of the Hamilton, said that but once, some years before, in substantially the same part of the river, he observed swells to act in that way.

Mr. Whiton, superintendent of the Hudson River Day Line, claimant of the Alexander Hamilton, was a witness on the trial. He had also, in his capacity as such superintendent, on the day after the accident, when the matter was fresh in his mind, written a letter to the managers of the insurance company carrying their insurance, and, if we accept as true the testimony on behalf of the Alexander Hamilton of her swell preceding her, then the only explanation therefor is found in such letter, and that is that heavy swells ran down ahead of the steamer because of shoal water at the side of the channel.

If this explanation be correct, then the Hamilton was making too much speed, and did not slow down sufficiently soon enough to prevent the rapid movement of such swells in the shoal water. In any event, whether the swells preceded the Hamilton or became operative as she passed, the question presented is, Has negligence on her part been shown? because the simple fact that the tow was damaged was not sufficient to sustain liability.

[1] Of course, the whole width of the channel was open to the navigation of the Hamilton, but when she passed the tow of the Jumbo, about 350 feet off, she was bound to use the care with reference to her speed which as experienced men those in charge of her should have known was required.

[2] A speed of 12 knots an hour has been held to be excessive. The Kaiser Wilhelm Der Grosse (D. C.) 134 F. 1012, 1013, reversed on other grounds (C. C. A.) 145 F. 623; The Chester W. Chapin (D. C.) 155 F. 854; The Robert Fulton, 187 F. 107; The Asbury Park (D. C.) 138 F. 617, affd. (C. C. A.) 142 F. 1037. And when you consider the circumstances in the case at bar, of shoal water just beyond the channel's edge and the effect which that would have, as shown by Superintendent Whiton in his letter to the insurance people, the duty on the part of the steamer to reduce her speed is plain.

If I was convinced that the Hamilton had reduced her speed to the extent claimed by her, and that the damage was caused by the swells preceding her, then I would hold that such action of the swells could not be reasonably anticipated, and that she was free from negligence. But finding, as I do, that she did not reduce her speed sufficiently to pass the Jumbo and her tow safely, but was proceeding at what, under the circumstances, I consider an excessive rate of speed, it does not make any difference, in my opinion, whether the swells struck the tow of the Jumbo before or after the Hamilton came abreast of it.

[3] There is no evidence which, in my opinion, rebuts the evidence that the swells of

the Alexander Hamilton were the only proximate cause of the damage of which complaint is made, and therefore it will be assumed that she did not slow down sufficiently soon enough. The Chester W. Chapin, supra. The fault of the Alexander Hamilton has been established, but on her behalf it is contended that the libelant failed to show that the barge was seaworthy, or that the lines were properly fastened, and that in making up the tow the barges were made fast too close together.

These contentions have not been sustained. The barge was in tow of the Jumbo from the preceding day, and no trouble had been experienced.

[4] The tow was made up in the regular way, and if some of the boats were made fast but from 4 to 5 feet apart, that has been approved by this court. The Chester W. Chapin, supra.

It was also contended by the Hamilton that the Jumbo did not reduce her speed soon enough, but I find no support for that contention. Even Superintendent Whiton, called on behalf of the Hamilton, said on the stand that he noticed the Jumbo and tow slow down, he thought, for a long way ahead, and he also said in his letter to the insurance people that the tow as a whole was pretty well made up, although he complained that the spaces between some of the scows were too close, but that, even where there were 6 to 8 feet between the scows, the swells forced the boats into collision.

I therefore can find no fault with which the respondent Cornell Steamboat Company can be charged. A decree may be entered in favor of the libelant against the Alexander Hamilton, with costs, and with the usual order of reference, and in favor of the respondent Cornell Steamboat Company, dismissing the libel, without costs.