### THE HARDING HIGHWAY.
### THE W. L. MARSHALL.

### WILMINGTON & PENNSGROVE TRANSP. CO. v. UNITED STATES.

No. 4572.

Circuit Court of Appeals, Third Circuit.
Sept. 25, 1931.

Rehearing Denied Jan. 13, 1932.

Lewis, Adler & Laws, of Philadelphia, Pa. (Otto Wolff, Jr., of Philadelphia, Pa., of counsel), for appellant.

J. Frank Staley, of Washington, D. C., and Charles M. Bolich, Asst. U. S. Atty., of Allentown, Pa., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

### BUFFINGTON, Circuit Judge.

By its libel a ferryboat, hereafter called "Harding," charged the self-propelling, government dredge, hereafter called "Marshall," with forcing it against a stone jetty as the two vessels attempted to pass each other. From a decree of the court below dismissing its libel, Harding appealed. On final analysis, the case resolves itself to narrow limits.

The disaster occurred on the Christiana river, where it flows at right angles into the Delaware. From Christiana's north bank a stone jetty, curving toward the south, projects some two thousand feet into the Delaware. The Christiana Channel was four hundred feet wide, the aggregate width of the vessels under seventy-nine feet. About 9 o'clock on the morning in question, Marshall, midway in Christiana Channel and dredging with suction on the bottom, was proceeding at two miles an hour. At the same time Harding, on a regular ferry trip, came down the Delaware. The vessels were familiar with what each one was regularly doing and were both familiar with the surroundings. There was no confusion or misunderstanding of signals, as Harding, before rounding the jetty to enter the Christiana, blew one blast and Marshall blew one in answer. Both vessels admit this meant Harding proposed, and Marshall accepted, a port to port crossing in the Christiana Channel. When Harding rounded the jetty and the vessels came in full sight of each other, Marshall was in such a position that there was ample leeway for Harding to pass between it and the jetty. The two continued on their respective courses, but when about three hundred feet apart, Harding saw Marshall was coming across Harding's path. At once the latter reversed engines full speed astern, but Marshall drew nearer so that as the vessels passed stern and stern and, as the proofs showed, Marshall's stern was, variously stated, ten or even two feet from Harding's stern, and Harding's starboard bow struck the jetty. It is, therefore, clear that there is no doubt as to where the accident occurred. There is no doubt that when the vessels came in sight and for some time thereafter there was ample roadway for their safe passage. There is no doubt that Harding did not pass over to Marshall's pathway and that, as soon as she saw Marshall coming toward her, she at once reversed her engines full speed astern. There is no doubt that Marshall did pass over into Harding's pathway and that when she found herself so going, she neither dropped anchor, reversed engine, nor blew danger signal. Marshall thus having passed over into Harding's pathway and blocked the port to port crossing to which both vessels had committed themselves, the burden rests on Marshall to justify her presence so near the jetty. This Marshall has not done. In so holding we have not overlooked the fact that under the circumstances of certain cases it was the duty of a navigating vessel to keep out of the way of an anchored or helpless dredge. But the present is a different case. The Marshall had two Diesel engines, one port, one starboard, adapted both to propel and measurably steer. She was moving even while suction dredging at two miles an hour; she had agreed to a port to port passage and she did not keep her course. Assuming that in spite of her maneuvering, the tide carried her over to the jetty and into Harding's promised pathway, this affords no justification for her presence there. No sudden, unforeseen, inevitable cause arose by reason of the tide. It was of no unusual character. She had been dredging there for some time; she knew the strength and set of the tide; she knew the power, or lack of power, of her

engines and steering means and how she responded or failed to respond in handling. All of these factors were incidents of navigation which were to be considered before she invited Harding to make a port to port passing. In the absence of convincing proof by the Marshall justifying her presence in the Harding's pathway, we are justified in charging her with faulty navigation and bad seamanship or a failure to reckon with the conditions incident to ordinary navigation in those waters, and that as a result the Harding was forced on the jetty in an endeavor to avoid a head on collision with possible loss of life to her passengers.

So holding, the decree dismissing the libel will be reversed, and a decree entered in favor of the libelant.