# CANADIAN AVIATOR, LIMITED *v.* UNITED STATES.

No. 279.   Argued January 5, 1945.—Decided February 26, 1945.

*Mr. Eugene Underwood,* with whom *Mr. Chauncey I. Clark* was on the brief, for petitioner.

*Assistant Attorney General Shea,* with whom *Solicitor General Fahy* and *Mr. Ralph F. Fuchs* were on the brief, for the United States.

Mr. Justice Reed delivered the opinion of the Court.

This writ brings here for review a libel filed by the petitioner, a Canadian corporation and owner of the steamship Cavelier, against the respondent, the United States Government, to recover, under the provisions of the Public Vessels Act, 1925, 43 Stat. 1112,[1] damages alleged to have been suffered by the Cavelier due to the negligent operation of a public vessel of the United States. The United States District Court dismissed the libel on the ground that it failed to state a cause of action within the Public Vessels Act, 1925, for which the United States had consented to be sued.[2] The Circuit Court of Appeals, one judge dissenting, affirmed the District Court.[3]

The jurisdiction of the United States District Court is based on § 24 of the Judicial Code. The petition for certiorari was granted, 323 U. S. 688, because the Circuit Court of Appeals decided a question of general importance relating to the construction of a federal statute. Jurisdiction of this Court rests on § 240 (a) of the Judicial Code.

On August 4, 1942, the petitioner, the owners of the steamship Cavelier, filed a libel *in personam* in admiralty in a federal district court against the United States to recover for damages to its ship, the Cavelier, alleged to have been caused by the negligent operation of the United States Naval patrol boat, YP 249, a public vessel of the United States. The libel averred that on July 7, 1942, the Cavelier, while en route from Canada to Jamaica, was ordered by United States Naval authorities to enter Dela-

---

[1] 43 Stat. 1112. Section 1 provides: "That a libel in personam in admiralty may be brought against the United States . . . for damages caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States . . ."

[2] *Canadian Aviator, Ltd.* v. *United States,* 52 F. Supp. 211.

[3] *Canadian Aviator, Ltd.* v. *United States,* 142 F. 2d 709.

ware Bay. Upon approaching the bay, the Cavelier received further instructions from the naval authorities that in her transit of the waters constituting the entrance to the bay, the Cavelier was to follow directly astern of the patrol boat, YP 249, a public vessel of the United States. While following directly astern of the YP 249, as ordered, the Cavelier struck a submerged wreck and sustained serious damages. It was further alleged that the collision with the wreck was due "solely to the fault and negligence of the United States vessel YP 249 and those in charge of her." [4] The libel also stated that petitioner, a Canadian corporation, elected to have its suit proceed in accordance with principles of libels *in personam* and *in rem;* that in similar circumstances the Government of the Dominion of Canada allows nationals of the United States to sue in its courts.

The respondent, United States, appeared specially and sought to have the libel dismissed because it failed to state a cause of action for which the United States had consented to be sued. Petitioner, the libelant, opposed this action, relying on § 1 of the Public Vessels Act, 1925, which provided that a "libel in personam in admiralty may be brought against the United States . . . for damages caused by a public vessel of the United States . . ." [5] The federal district court dismissed the libel on the ground that the accident alleged in the libel was not caused by the *"negligent operation of the vessel,"* that the vessel was

---

[4] The petitioner's libel alleged the following specific acts of negligence:

"1. She was not in charge of a competent person.

"2. She failed to keep a good look-out.

"3. She failed to guide the *Cavelier* safely through the waters constituting the entrance to Delaware Bay.

"4. She led the *Cavelier* directly over a submerged wreck.

"5. She failed to give the *Cavelier* proper or adequate guidance as to making a safe entrance into Delaware Bay."

[5] See note 1, *supra.*

not the "efficient cause" of the accident but that the accident arose from the *"personal and independent negligence of its officers."* The court held that the Act authorized suit only where the public vessel was the proximate cause of the damage.

The Circuit Court of Appeals affirmed the action of the district court on the theory that the phrase in the Act "caused by a public vessel" meant caused by those in charge of the vessel, with the vessel as the "noxious instrument," the "physical instrument," by which the physical damage was done; that in the instant case the physical cause was the submerged wreck. The Circuit Court also held that the Act did not authorize recovery on the admiralty principles of *in rem* liability.

The dismissal by the lower court of petitioner's libel raises three questions for consideration by this Court: Does the Public Vessels Act, 1925, authorize suit against the United States where the public vessel is not the physical cause, the "physical instrument" by which the damage is done; that is, is the Act confined to cases involving the collision situation? If not, does the Act, which authorizes the filing of a libel *in personam* against the United States, authorize recovery in such suit on admiralty principles of *in rem* as well as *in personam* liability? Finally, if the Act authorizes recovery on admiralty principles *in rem* and *in personam,* does petitioner's libel state a cause of action under those principles of admiralty law?

The Public Vessels Act, 1925, was the last in a series of statutes directed generally at affording private vessel owners an adequate and efficient remedy for damages arising from negligent operation of ships owned by the United States.[6] Prior to 1916 a private owner whose ship was

---

[6] Benedict, Admiralty (6th Ed.) vol. 1, 437; Robinson, Admiralty, 266; Lord, Admiralty Claims Against the Government, 19 Columbia L. Rev. 467; Borchard, Government Liability in Tort, 34 Yale L. J. 1, 35–41; 39 Yale L. J. 1189.

damaged by negligent operation of a vessel owned or operated by the United States could not recover from the United States for damages suffered due to the United States' immunity from suit. On the other hand, the United States could sue private owners for damages arising from their negligence. Recognizing the inequities of this situation, Congress passed numerous private acts granting relief in a particular case where a private vessel was damaged by negligent operation of a government ship. The delays, coupled with the inconvenience to Congress of handling each claim by separate bill, led Congress to provide in the Shipping Act of 1916, 39 Stat. 728, that Shipping Board vessels while employed as merchant vessels were subject to "all laws, regulations, and liabilities governing merchant vessels" regardless of the fact that the United States owned or had an interest in them.[7]

In *The Lake Monroe*, 250 U. S. 246, this Court held that this statutory waiver of sovereign immunity from suit subjected Shipping Board merchant vessels to proceedings *in rem* in admiralty. Since the arrest and seizure of a vessel incident to an admiralty proceeding *in rem* proved embarrassing, Congress, in 1920, adopted the Suits in Admiralty Act, 41 Stat. 525,[8] which provided

---

[7] Section 9 provides, in part, 39 Stat. 730–31:

"Every vessel purchased, chartered, or leased from the board . . . while employed solely as merchant vessels shall be subject to all laws, regulations, and liabilities governing merchant vessels, whether the United States be interested therein as owner, in whole or in part, or hold any mortgage, lien, or other interest therein."

[8] 41 Stat. 525–26, § 1: "That no vessel owned by the United States . . . or in the possession of the United States . . . and no cargo owned or possessed by the United States . . . shall hereafter, in view of the provision herein made for a libel in personam, be subject to arrest or seizure by judicial process in the United States or its possessions . . .

"SEC. 2. That in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained at the time of the com-

generally that a "libel in personam" for damages could be filed against the government in any case where if the government merchant vessel were privately owned or operated a "proceeding in admiralty" could be maintained, § 2; but that vessels subject to suit under the Act should not be subject to seizure or arrest, § 1. Although § 2 of the Act limited suit to the "filing of a libel in personam," this Court interpreted the provisions of § 3 of the Act to authorize recovery in such suit on admiralty principles of *in rem* as well as *in personam* liability.[9] *Eastern Transportation Co.* v. *United States,* 272 U. S. 675. The Act also provided that the United States should be entitled to the benefits of all exemptions and of all limitations of liability accorded by law to owners, charterers, operators or agents of vessels, § 6.[10]

At the time the Suits in Admiralty Act was being considered by Congress, it was proposed to extend its coverage

mencement of the action herein provided for, a libel in personam may be brought against the United States or against such corporation, as the case may be, provided that such vessel is employed as a merchant vessel or is a tug boat operated by such corporation. Such suits shall be brought in the district court of the United States for the district in which the parties so suing, or any of them, reside or have their principal place of business in the United States, or in which the vessel or cargo charged with liability is found. . . ."

[9] 41 Stat. 526: "That such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties. . . . If the libelant so elects in his libel the suit may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained. Election so to proceed shall not preclude the libelant in any proper case from seeking relief in personam in the same suit. . . ."

[10] 41 Stat. 527: "SEC. 6. That the United States or such corporation shall be entitled to the benefits of all exemptions and of all limitations of liability accorded by law to the owners, charterers, operators, or agents of vessels."

to include "public vessels" as well as merchant vessels of the United States. Apparently fearing that such an extension of the scope of the bill would delay passage, the Suits in Admiralty Act was adopted, its provisions being confined to "merchant vessels."[11]

After the introduction of several bills[12] dealing with suits against public vessels, Congress, in 1925, adopted the Public Vessels Act, 43 Stat. 1112. It provided that a "libel in personam in admiralty may be brought against the United States . . . for damages caused by a public vessel of the United States." § 1.[13] Venue of such suits is laid in the district court for the district "in which the vessel or cargo charged with creating the liability is found within the United States."[14] § 2. It was also provided that suits under the Act "shall be subject to and proceed in accordance with the provisions of . . . [Suits in Admiralty Act, 1920, 41 Stat. 525] or any amendment thereof, in so far as the same are not inconsistent herewith . . ."[15]

---

[11] Hearings of the House Committee on Judiciary, S. 3076 and H. R. 7124, Nov. 13, 1919, 66th Cong., 1st Sess., at p. 7.

[12] H. R. 13591, April 13, 1920, 66th Cong., 2d Sess.; H. R. 6989, February 14, 1924, 68th Cong., 1st Sess.; H. R. 9075, May 5, 1924, 68th Cong., 1st Sess.; H. R. 9535, May 29, 1924, 68th Cong., 1st Sess.

[13] See note 1.

[14] The Act also contained a special venue provision for cases where the vessel was outside the territorial waters of the United States. 43 Stat. 1112.

[15] 43 Stat. 1112: "Sec. 2. That such suit shall be brought in the district court of the United States for the district in which the vessel or cargo charged with creating the liability is found within the United States, . . . Such suits shall be subject to and proceed in accordance with the provisions of an Act entitled 'An Act authorizing suits against the United States in admiralty, suits for salvage services, and providing for the release of merchant vessels belonging to the United States from arrest and attachment in foreign jurisdictions, and for other purposes,' approved March 9, 1920, or any amendment thereof, in so far as the same are not inconsistent herewith, except that no interest shall be allowed on any claim up to the time of the rendition

The Act also specified that no suit may be brought by a national of a foreign government unless said foreign government, under similar circumstances, allows nationals of the United States to sue in its courts, § 5; §§ 8 and 9 of the Act contain provisions similar to those in the Suits in Admiralty Act, providing that the statute should not be construed to recognize the existence of a lien against a public vessel and conferring on the United States all exemptions and limitations of liability accorded by law to owners of private vessels.[16]

*First.* Respondent contends that § 1 of the Public Vessels Act authorizing suits against the United States "for damages caused by a public vessel" should be construed to apply only in cases where the public vessel is the "physical instrument" by which the "physical damage" is done, e. g. collision; that therefore petitioner's libel does not lie under the Act. Such a construction narrowly limits the Act's relief. We conclude that such a narrow interpretation of the Act is not justifiable. While the general history of the Act as outlined above does not establish that the statute necessarily extends to the non-collision cases in view of the rule of strict construction of statutory waiver of sovereign immunity, *United States* v. *Sherwood,* 312 U. S. 584, 586; *Eastern Transportation Co.* v. *United States, supra,* we think Congressional adoption of broad statutory language authorizing suit was deliberate and is not to be thwarted by an unduly restrictive interpretation. See *The Lake Monroe,* 250 U. S. 246;

---

of judgment unless upon a contract expressly stipulating for the payment of interest."

[16] 43 Stat. 1113: "SEC. 8. Nothing contained in this Act shall be construed to recognize the existence of or as creating a lien against any public vessel of the United States.

"SEC. 9. The United States shall be entitled to the benefits of all exemptions and of all limitations of liability accorded by law to the owners, charterers, operators or agents of vessels."

*Nahmeh* v. *United States,* 267 U. S. 122, 125–26; *Eastern Transportation Co.* v. *United States, supra; Federal Land Bank* v. *Priddy,* 295 U. S. 229, 231.

In 1924, H. R. 6989 was introduced in the House of Representatives, its provisions being similar [17] to those of the Public Vessels Act as adopted, with this material difference: Section 1 of that bill authorized suit against the United States "for damages caused *by collision* by a public vessel." (Italics added.) On reference to the House Committee on Claims, a substitute bill, H. R. 9535, was reported to the House.[18] This bill provided for suits "for damages caused by a public vessel of the United States." This bill with the latter phrase included subsequently became the Public Vessels Act. This change in the language of the Act prior to its adoption convinces us that Congress intended to authorize suits in other than collision cases. The sponsors of the bill in both houses of Congress understood that it extended to cases where damage was done "by collision, or other fault of Government vessels and Government agents." [19] Moreover, Congres-

---

[17] H. R. 6989, 68th Cong., 2d Sess., provided: "That a libel in personam in admiralty may be brought against the United States, . . . for damages caused by collision by a public vessel of the United States, . . ."

This bill was highly similar to the Public Vessels Act, 1925, 43 Stat. 1112, as finally adopted. A material variance, other than the one mentioned above, was a provision making the consent of the Attorney General a condition precedent to suit under the bill.

[18] H. Rep. No. 913, May 31, 1924, 68th Cong., 1st Sess.

[19] 66 Cong. Rec. 2087. Representative Underhill, the sponsor of the bill, stated:

"The bill I have introduced simply allows suits in admiralty to be brought by owners of vessels whose property has been damaged by collision or other fault of Government vessels and Government agents."

Similarly, Senator Bayard, in discussing the measure in the Senate, said, 66 Cong. Rec. 3560:

"It would give a person aggrieved because of an accident by reason of the shortcomings of a United States ship the right to go into a dis-

sional reports on this bill and the course of discussion in the numerous hearings held on predecessor measures to the present bill, indicates that authority to sue was not to be limited to cases where the vessel was the physical instrument that caused the physical damage.[20]

The use of the phrase "caused by a public vessel" constitutes an adoption by Congress of the customary legal terminology of the admiralty law which refers to the vessel as causing the harm although the actual cause is the negligence of the personnel in the operation of the ship. Such personification of the vessel, treating it as a juristic person whose acts and omissions, although brought about by her personnel, are personal acts of the ship for which, as a juristic person, she is legally responsible, has long been recognized by this Court. *United States* v. *Brig Malek Adhel,* 2 How. 210, 233–34; *The China,* 7 Wall. 53, 68; *Ralli* v. *Troop,* 157 U. S. 386, 402–3; *The John G. Stevens,* 170 U. S. 113, 120; *The Barnstable,* 181 U. S. 464, 467. That such was the meaning attributed to this phrase is further evidenced by § 2 of the Act, relating to venue, which provides that venue shall lie in the district "in which the vessel or cargo charged with creating the liability is found." 43 Stat. 1112. The consent to suit embodied in the Act thus extends to cases where the negligence of the personnel of a public vessel in the operation of the vessel causes damage to other ships, their cargoes, and

---

trict court and prosecute his action. It provides for the appearance of the Attorney General of the United States, and all maritime accidents of any kind resulting from collision, and so on, are taken care of. A great deal of money would be saved to the Government."

[20] H. Rep. No. 913, 68th Cong., 1st Sess., at p. 63; S. Rep. No. 941, 68th Cong., 2d Sess., at p. 3; see also H. Rep. No. 1301, 66th Cong., 3rd Sess., Feb. 7, 1921, see especially letter of the Acting Secretary of the Navy, p. 8; Hearings before Committee on Judiciary of the House of Representatives, on H. R. 9075, 68th Cong., 1st Sess., May 21, 1924, pp. 6, 19, 21, 23, 28, 30.

personnel, regardless of physical contact between the two ships,[21] and where principles of admiralty law impose liability on private parties. There seems no logical reason for allowing recovery for collision and refusing recovery for damages caused by other movements of the offending vessel.

The fact that the Committee reports on the bill state that the "chief purpose" of the Act is to authorize recovery in collision cases, that the departmental letters attached to the report consider principally the "collision" situation, does not require that the statute should be so limited.[22] Respondent relies on *The Osceola,* 189 U. S. 158, in which it was held that a Wisconsin statute imposing liability "for all damages . . . done to persons or property by such ship," did not apply to injuries suffered by a member of a ship's crew arising from the negligence of the master of the vessel, since the damage was not "done by the ship herself, as the offending thing, . . ." 189 U. S. 158, 176. Since that case involved a suit by a member of the crew against his employer-owner of the vessel, the holding in that decision on its facts is clearly inapplicable to the instant case. Moreover, the language in the Wisconsin statute is narrower in scope than that in the Public Vessels Act, 1925, which refers generally to "damages caused by a public vessel." Furthermore, the legislative history of the Public Vessels Act requires a different result in so far as the *Osceola* case interprets the Wisconsin statute to apply only to cases where the vessel is itself the physical cause of the damage. These latter two considerations serve also to distinguish *The Vera Cruz, No. 2,* 9 L. R., Prob. Div. 96 [1884]. Respondent also relies on

---

[21] See *Coastwise Transportation Corp.* v. *United States,* 43 F. 2d 401; *The Harding Highway,* 53 F. 2d 938.

[22] H. Rep. 913, 68th Cong., 1st Sess., pp. 1, 6; S. Rep. No. 941, 68th Cong., 2d Sess., pp. 1, 6.

*Dobson* v. *United States,* 27 F. 2d 807, and *O'Neal* v. *United States,* 11 F. 2d 869. These cases are not apposite on the question under consideration since they also involved suits for damages, for personal injuries sustained by a seaman employee aboard his own ship, against the United States as employer.

*Second.* Petitioner, evidently relying on § 2 of the Act, states in its libel that it elects to have the action proceed on principles of *in rem* as well as *in personam* liability.[23] As the Circuit Court of Appeals apparently holds that the Act does not authorize recovery on principles of *in rem* liability because of the statutory denial of a maritime lien, we turn to a consideration of this holding. Does the Public Vessels Act which authorizes filing of a "libel in personam" authorize the courts to apply principles of *in rem* as well as *in personam* liability in admiralty?[24] As was indicated, p. 219 *supra,* this Court held that the Suits in Admiralty Act, which also authorizes filing of a "libel in personam" authorizes the courts to grant judgment on *in rem* as well as *in personam* principles, except that the government vessel was not subject to seizure or arrest.

---

[23] See Admiralty Rules, Supreme Court, Rule 14:

"In all suits for pilotage or damage by collision, the libellant may proceed *in rem* against the ship and/or *in personam* against the master and/or the owner."

[24] See note 1, *supra.* At the time of the Committee reports on H. R. 9535 (which when adopted became the Public Vessels Act), the courts had not yet interpreted the Suits in Admiralty Act, 41 Stat. 525, to authorize recovery on admiralty principles of both *in rem* and *in personam* liability. See *Eastern Transportation Co.* v. *United States,* 272 U. S. 675 (1927). We find no discussion of whether § 2 of the Public Vessels Act imported both principles into its text. The problem had been adverted to in the Attorney General's letters of opinion to the committees considering the problem. H. Rep. No. 913, p. 12, 68th Cong., 1st Sess.; S. Rep. No. 941, p. 12, 68th Cong., 2d Sess.; Hearings before the Committee on Judiciary of the House of Representatives on H. R. 9075, May 21, 1924, pp. 30, 31 and 34.

Section 3 of that Act, "Procedure in cases of libel in personam," [25] specifically authorizes a libelant, if he so elects, to proceed in accordance with principles of libels *in rem* if it appears that had the vessel been privately owned a libel *in rem* might be maintained; election to so proceed is not to preclude the libelant from seeking relief *in personam* in the same suit. Although the Public Vessels Act does not have a similar provision, § 2 of the Public Vessels Act expressly provides that "suits shall be subject to and proceed in accordance with the provisions" of the Suits in Admiralty Act, "in so far as the same are not inconsistent" with the provisions of the Public Vessels Act.[26] Since there is nothing in the Public Vessels Act that is inconsistent with this provision of the Suits in Admiralty Act, we hold that the incorporation clause applies. Other provisions of the Public Vessels Act support such incorporation. Authority is given to sue generally "in admiralty"; this broad generic term implies a right to invoke principles of *in rem* and *in personam* liability. Furthermore, in *Eastern Transportation Co.* v. *United States, supra,* we held that authority to resort to both types of principles of admiralty liability was borne out by the fact that the Suits in Admiralty Act provided that the United States should be entitled to all the exemptions accorded to private persons under admiralty law. We there held:

"The necessary implication is that if, under the Harter Act . . . or the Limitation of Liability Act, . . . the United States as owner of a merchant vessel should not be able to show performance of the conditions upon which such statutory limitations of liability are granted, it must assume the personal liability for negligence in such cases exactly as a private owner would." (272 U. S. 675, 690–91.)

---

[25] 46 U. S. C. § 743; see note 9, *supra.*
[26] See note 15, *supra.*

The Public Vessels Act contains the same exemption provision as that in the Suits in Admiralty Act.[27] This interpretation of the Act accords with the broad purpose expressed in the Congressional hearings and reports on the Act.[28] In addition, such an interpretation accomplishes Congress' purpose to grant foreign nationals the same rights as would be accorded our nationals in foreign courts in a similar situation; a narrower interpretation would limit the reciprocal effect of this Act.[29]

*Third.* Since we hold that the Public Vessels Act was intended to impose on the United States the same liability (apart from seizure or arrest under a libel *in rem*) as is imposed by the admiralty law on the private shipowner, it remains to be considered whether petitioner states a valid cause of action under general principles of admiralty law, *in rem* and *in personam.* Petitioner alleges that the respondent's vessel, having undertaken to guide petitioner's boat, the Cavelier, through the waters at the entrance of the bay, did so in a negligent fashion causing petitioner to strike a submerged wreck; that the accident was caused solely by the negligence of YP 249 and its crew. It needs no extended citation of authority to show that where a tug negligently grounds its tow, the tug and its owner are liable for the damages resulting therefrom. *The Quickstep,* 9 Wall. 665; *The John G. Stevens,* 170 U. S. 113; *The Temple Emery,* 122 F. 180; *The W. G. Mason,* 142 F. 913; see, *The Caspian,* 14 F. 2d 1013; *The Murrell,* 200 F. 826; *The Sally McDevitt* v. *The J. W. Paxon,* 24 F. 302; *The Rescue,* 74 F. 847.[30] The fact that the Cavelier was not fastened to the YP 249 by a tow rope is irrelevant.[31] The libel avers that she was under

---

[27] See note 16, *supra.*

[28] See note 20, *supra.*

[29] See note 16, *supra.*

[30] Benedict, Admiralty (6th Ed.), vol. 1, pp. 363–5, 367–69.

[31] It is clear that tort liability in admiralty does not require physical contact between the offending vessel and its victim. See *Leathers*

orders by the naval authorities to proceed directly astern of the YP 249; for all practical purposes she was as firmly fastened to the stern of the YP 249 as if she had been in tow.

The judgment of the circuit court is reversed, and the cause remanded to the district court with direction to proceed with consideration of the case on the merits.

---

v. *Blessing*, 105 U. S. 626, 630: "Nor is the term 'tort,' when used in reference to admiralty jurisdiction, confined to wrongs or injuries committed by direct force, but it includes wrongs suffered in consequence of the negligence or malfeasance of others, where the remedy at common-law is by an action on the case." See also *Eastern Transportation Co.* v. *United States*, 272 U. S. 675; *In re Fassett*, 142 U. S. 479, 485; *Philadelphia, W. & B. R. Co.* v. *Philadelphia & H. de G. Towboat Co.*, 23 How. 209, 215–16; *The Lyndhurst*, 92 F. 681; *The Kronprinzessin Cecilie*, 192 F. 27; *The Campania*, 203 F. 855; *The Washington Irving*, 250 F. 797; *The Luke*, 19 F. 2d 923, aff'd, 19 F. 2d 925; *Coastwise Transportation Corp.* v. *United States*, 43 F. 2d 401; *The J. C. Hart*, 43 F. 2d 566; *The Favorita*, 43 F. 2d 569.