**YOUNG BROS., Limited, v. CHO. THE KOLO.**

No. 12363.

United States Court of Appeals
Ninth Circuit.

June 22, 1950.

Smith, Wild, Beebe & Cades, Honolulu, T. H., J. Edward Collins, Honolulu, T. H., for appellant.

J. Garner Anthony, William F. Quinn, Honolulu, T. H. (Robertson, Castle & Anthony, Honolulu, T. H., of counsel), for appellee.

Before MATHEWS, STEPHENS and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This case is a libel in admiralty against the tug Kolo to recover for the loss of the sampan Tenyo Maru, owned by the libelant. The sampan was abandoned while under tow by the tug between the islands of Molokai and Oahu, Hawaii, and was not thereafter found. The trial court awarded judgment against the tug in the amount of the value of the sampan.

The findings were as follows: The sampan went aground on a reef off Molokai on April 3, 1948. Three days later she was towed off the reef by the tugs Kolo and Mahoe, both owned by the claimant (appellant), and taken by The Kolo to Kaunakakai, Molokai. As a consequence of having been on the reef the sampan's hull was damaged in an area 3 inches wide and about 1½ feet long and was in an unseaworthy condition because of its grounding—a condition known both to the libelant and to the master of the tug. There being no proper facilities for repairing the sampan at Kaunakakai, the master of The Kolo, on April 7, undertook to tow her to Honolulu. When the tug and its tow were in the Molokai Channel, 8 to 10 miles from Molokai, the sampan had taken water to the extent that her decks were awash and she had 3 to 4 feet of freeboard in the bow. When observed in that condition she was being towed astern of the tug by a hempen hawser. The tug's master had had no prior experience in open sea salvage towing, and due to his inexperience he immediately ordered the towline cut, and returned to pick up the sampan's crew notwithstanding he was advised by an experienced member of his own crew that the sampan would not sink and that the towline should not be cut. When last seen the sampan was still floating, decks awash, in the Molokai Channel. The court found that the sampan, being without cargo and having received a major overhaul of her hull in 1944, and having been placed in drydock for all necessary repairs at least once every five months since 1946 until the date of the abandonment, had sufficient positive buoyancy to remain afloat and could in fact have been towed to Honolulu had she not been cut loose. The court concluded that both the libelant and the master of The Kolo were negligent in taking a known unseaworthy craft in tow; that the master of the tug failed to exercise the degree of care and skill required of him in open sea towage when he cut The Tenyo Maru adrift under the circumstances then existing; that the negligence of the tug's master was the sole cause of the loss, and that the tug is solely liable for the full damage suffered by the libelant. There was a further conclusion that negligent towage is a maritime tort rendering the offending vessel liable in rem so long as the latter is in the hands of a person having lawful possession of her.

Appellant makes three contentions. It argues (1) that a libel in rem may not be maintained against a tug on a cause sounding in tort, arising out of a towage agreement entered into by the master of the tug without the authority of its owner, where such lack of authority was known, or should have been known, to the libelant; (2) that the cutting of the towline did not, in the circumstances shown, constitute negligence; and (3) that in any event, in the circumstances, the tug and her master are not solely responsible for the loss of the tow, known to be unseaworthy by her owner at the time the tow was undertaken, hence the loss should be divided.

1. The first of these propositions proceeds on the doubtful assumption that the authority of the master of The Kolo was limited to rescuing the sampan from the reef and towing her to the harbor of Kaunakakai, that is to say, he lacked authority from his employer to undertake the further towage to Honolulu. The court made no finding on this point for the reason, apparently, that it thought such determination unnecessary inasmuch as the master had lawful possession of the tug.

In cases of tort, American admiralty law has traditionally regarded the ship as causing the harm although the actual cause is the negligence of personnel lawfully in charge of her. As very recently observed by the Supreme Court in Canadian Aviator, Ltd., v. United States, 324 U.S. 215, 224, 65 S.Ct. 639, 644, 89 L.Ed. 901, "Such personification of the vessel, treating it as a

juristic person whose acts and omissions, although brought about by her personnel, are personal acts of the ship for which, as a juristic person, she is legally responsible, has long been recognized by this Court." Appellant does not question this general rule, but contends that the decisions have established certain exceptions to it in towage cases. Three decisions are relied on, namely, The R. F. Cahill, D.C.S.D.N.Y., 1878, Fed.Cas. No. 11,735, 9 Ben. 352; The Andrew J. White, D.C.E.D.N.Y., 1901, 108 F. 685; and The Oceanica, 2 Cir., 1909, 170 F. 893. All three cases are alike in that they involved a disregard by the tug's master of specific and express limitations imposed on the movements of the tug by its owner.

A discussion of the Andrew J. White case, supra, will suffice, as it is typical of the group. There the barkentine Minnie was tied up in a slip in Brooklyn, along with other vessels. The removal of The Minnie from the slip required operations in very close quarters and the exercise of special skill. A towage contract was made by The Minnie with the agent of the owner of the tug Andrew J. White, the agreement being that the captain of the barkentine would have her hauled to the mouth of the slip ready for the tug. At the time appointed, however, The Minnie had not been moved, whereupon the tug master undertook to tow her from her then position out of the slip, and in the process The Minnie was damaged by collision with a scow. In a libel brought against the tug the court denied relief on the ground that the service on the part of the tug was not only gratuitous, but, to the knowledge of the parties immediately participating, it was done against the will of the owner.

■■ Whatever the authority of these decisions, the evidence fails to bring this case within the exceptive rule they stand for. There was no showing that appellant imposed definite limitations on the extent of the services its tug was to perform. Certainly the services included something beyond merely pulling the sampan off the reef. It is gatherable from the testimony of The Kolo's captain that he considered it part of his job to take the sampan to Hono-

lulu where it could be repaired; and there is no satisfactory evidence that either he or the libelant understood, or should have understood, that the assumption was unwarranted. It is true that the master of appellant's tug Mahoe, who was senior in authority to The Kolo's captain, referred the libelant to appellant's Honolulu office in the course of a discussion concerning the towage of the sampan to Honolulu. But before The Mahoe left Kaunakakai its master, Ching Ho, was told by The Kolo's captain that he was going to tow the sampan to Honolulu, and Ching Ho said nothing. The burden of proving the violation or disregard of an express understanding or agreement was on appellant, and the burden remained undischarged.

■ 2. The finding of negligence in setting the sampan adrift was not clear error. It appears from the testimony of The Kolo's master that the sampan was being towed at the time the decision was made to abandon her, notwithstanding she had taken water to the extent that her decks were awash. Her situation in this respect had not, therefore, rendered her impossible of towage. Nor was The Kolo or her crew confronted with any immediate peril. There was competent evidence that so long as the vessel was being towed astern, little danger existed that the situation would deteriorate so rapidly that it could not be taken care of. This was not a case where the cutting loose of the tow should be classified as a mere error of judgment in a difficult situation. It was rather a case of panic or the exercise of poor judgment on the part of an admittedly inexperienced master, persisted in despite the advice of an experienced member of his own crew that the sampan would not sink and should not be cut adrift. Cf. The Stirling Tomkins, 2 Cir., 56 F.2d 740. It is significant, also, that the master of the sampan, who testified as a witness, made no mention of the existence of danger.

The finding relative to the buoyancy of the sampan and its capacity to continue afloat until Honolulu was reached is strongly supported by the testimony of competent witnesses. The remaining distance to be covered was not more than fifteen miles.

3. It is clear from what has already been said that it was not error to find that The Kolo's action was the sole proximate cause of the loss.

Affirmed.