**Thorleif PEDERSEN, Libellant-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 240, Docket 23340.**

United States Court of Appeals Second Circuit.

Argued April 5, 1955.

Decided June 9, 1955.

Swan, Circuit Judge, dissented in part.

Martin M. Kolbrener, New York City (Richard Gyory, New York City, of counsel), for libellant-appellant.

Warren E. Burger, Asst. Atty. Gen., Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Martin J. Norris, Atty., Department of Justice, New York City, for appellee-appellant.

Before HAND, SWAN and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

This libel was brought under the Public Vessels Act, 46 U.S.C.A. § 781 et seq., against the United States, as the owner of S. S. Francis X. McGraw, for damages for personal injuries. After trial to the court, it was held that the respondent was negligent and that libellant was entitled to recover. The court assessed libellant's damages at $15,000 but, holding that libellant's own negligence had contributed to his harm, deducted 40 per cent from the above sum and entered a decree for libellant in the amount of $9,000. D.C., 122 F.Supp. 614.

Libellant appeals from that order contending that the lower court's award of damages was inadequate, and that the facts of the case did not warrant the holding of contributory negligence. The respondent cross-appealed claiming that the judgment below should be reversed on either of two grounds: (1) that there was no negligence on its part since it owed no duty to libellant; (2) that libellant's want of care wholly caused the harm of which he complains. In the alternative, the respondent maintains that at least in one respect the assessment of damages was excessive.

The facts as found by the trial judge were as follows. At the time of his accident libellant was employed by the Seaboard Shipping Company as captain of an oil barge, the Seaboard No. 55. The only other person assigned to the No. 55 was the mate. On October 5, 1948, at about 7:30 A.M., the No. 55, with both libellant and the mate aboard, was towed to Pier 14, Staten Island, for the purpose of fueling the McGraw. For this operation the No. 55 was secured to the offshore or starboard side of the McGraw by means of mooring lines. The oil and steam hoses of the barge were then connected with the McGraw's intake valve pipes. After adjustment of the lines and valves all was in readiness for the McGraw to accomplish the refueling operation.

It is undisputed that before the No. 55 was secured to the McGraw a Jacob's ladder extended from the boat deck of the McGraw over its starboard side down to the water level. When the No. 55 was sighted an unidentified member of the McGraw crew raised the ladder, taking in the slack on the main deck, below the boat deck where it was made fast. On conflicting testimony as to the position of the ladder thereafter the trial judge found that it had been raised until its lowest rung was 8 to 12 feet above the deck of the No. 55 then alongside. This ladder was the sole means by which the crew of the No. 55 could board the McGraw.

When the preparations for transferring the fuel were completed, libellant, intending to go ashore, went to his cabin and changed his clothes. On his return to the deck he observed that the barge's stern breast line was chafing against the square rail on the main deck of the McGraw. The parting of a breast line, while live steam and oil was passing through the connecting hoses in the fueling operation, might well create a hazardous condition. Believing that another breast line should be substituted, the libellant and his mate shouted to the McGraw for five or ten minutes but failed to attract attention. Thinking that continued calling would be useless, the libellant decided to bo aboard the McGraw and receive from his mate a substituted breast line.

To reach the Jacob's ladder positioned as above described, libellant placed a 12-foot wooden ladder belonging to the No. 55 against the side of the McGraw which he climbed until he could reach the lowest rung of the Jacob's ladder. Since he could not see whether the Jacob's ladder was securely fastened on the main deck of the McGraw, he tested it by placing his left foot on its lowest rung before leaving the wooden ladder. Under the increasing pressure of his weight, the Jacob's ladder at first gave way a little but then held firm and the libellant climbed up seven rungs to a point close to the rail of the main deck of the McGraw. At that point the slack in the Jacob's ladder which had been taken inboard in the main deck came loose and fell. The libellant was thereby thrown upon the deck of the No. 55, sustaining the injuries complained of.

 On these facts, we think the case falls within the holding of Grillo v. Royal Norwegian Government, 2 Cir., 139 F.2d 237. We hold that the respondent was under a duty to provide the crew of the No. 55 with a safe means of boarding the McGraw for purposes of the fueling operation. Since the evidence warranted a finding that the libellant was boarding the McGraw for such a purpose and that the Jacob's ladder, apparently provided for boarding, because unsecurely fastened was the cause of libellant's harm, it was rightly held that the respondent was negligent and hence liable. See Cannella v. Lykes Bros. S. S. Co., 2 Cir., 174 F.2d 794; United States Fidelity & Guaranty Co. v. United States, 2 Cir., 152 F.2d 46.

 The respondent contends that the position of the Jacob's ladder above the natural reach of the crew of the No. 55 negatived any "invitation" to use it.

But this argument rests on an inference of fact which the trial judge—not unreasonably we think—resolved against the defendant. After all, the force of this argument was diluted by evidence that the ladder was raised when the No. 55 came alongside only to keep it from being crushed between the two vessels and that, as the No. 55 discharged its oil, it would rise in the water until the ladder would be within convenient reach from its deck. But even if the ladder by reason of its position had not been intended as an invitation to the crew of the No. 55, its presence over the side with slack unfastened on the deck rendered the McGraw unseaworthy, and the respondent's liability might well have been predicated on that ground. Cannella v. Lykes Bros. S. S. Co., supra; Lauro v. United States, 2 Cir., 162 F.2d 32. Cf. American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011; Canadian Aviator, Ltd. v. United States, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901.

The trial judge held that libellant was contributorily negligent chiefly on the ground that he failed adequately to test the Jacob's ladder with his full weight before attempting to climb it. As to this, the finding that the libellant climbed seven steps up the ladder before its slack pulled free, seems necessarily to import that an earlier test with his full weight would have failed to disclose the hazard. Consequently, we think the failure to test may not be deemed a proximate cause of the accident. Nor was there other evidence which warranted a finding of contributory negligence. It is true that the position of the wooden ladder against the side of the McGraw was precarious, but the libellant's injuries were not predicated on that factor. Nor was there evidence to justify a finding that the canvas bag which the libellant was carrying caught on the ladder: testimony that it touched the uprights as the libellant climbed, was not enough to prove that it caught and thereby caused his fall.

The trial judge in his opinion further grounded his finding of contributory negligence upon the libellant's "undertaking to climb the ladder, assuming that it had been properly secured." We think, however, that Mason v. United States, 2 Cir., 177 F.2d 352, which the trial judge cited to this proposition, must be distinguished on its facts. For in Mason, a harbor pilot in a tug went to a ship to shift it to an anchorage. Although doubtless the tug had an adequate whistle, no warning of the pilot's arrival was given: for aught that appeared the ship did not know that he had come and that he might attempt to board by the Jacob's ladder which was within reach from the tug. There was no particular reason why the pilot had to board the ship forthwith: for aught that appeared he could have waited until the safety of the ladder had been verified instead of relying on its apparent readiness. In the instant case, however, the McGraw knew of the barge's position and errand; it knew that Pedersen might momently have business aboard. And Pedersen, having failed to attract attention by voice—the only means of communication available to him—was faced with the possibility of dangerous harm from broken hose connections unless he boarded promptly by the ladder which proved sufficiently secure to support his full weight for the greater part of his ascent. Under the principles enunciated in the Restatement of Torts, §§ 470 and 471, this emergency and possibility of harm to others were factors to be considered in determining whether his conduct amounted to contributory negligence. We think the evidence on the whole was insufficient to support the judge's finding on that issue.

Coming to the attacks, raised by the appeal and cross-appeal, on the amount of damages as assessed by the trial court, we hold that the record does not warrant appellate intervention. The finding of a 10% to 20% permanent partial disability was essentially a characterization of the

physical injuries. Whatever the effect of such a finding may be in a workmen's compensation proceeding, in a civil action such as this it does not necessarily import that the libellant's future earnings in dollars will be reduced by the stated percentage. Indeed, here—as is usual in such cases—the characterization was made by a medical expert who so far as appears is not qualified to testify to the pecuniary effect of a physical injury. A finding of physical condition such as this must be distinguished from a finding as to loss of earning power, such as was made in Carroll v. United States, 2 Cir., 133 F.2d 690. In Porello v. United States, 2 Cir., 153 F.2d 605, it is apparent from the context that the court was not translating a medical finding of disability into dollars but used the word "disability" to express its own determination of loss of earning power.

Here it appears that the trial judge took into account such evidence as there was on all relevant factors. Nothing in his findings or opinion shows that he misconceived applicable standards. The evaluation of the several factors bearing on the assessment of damages depended largely on an exercise of the judgment faculties. We cannot say that the result thus reached was clearly erroneous. Lukmanis v. United States, 2 Cir., 208 F.2d 260, 261.

We hold, therefore, that the decree should be affirmed except in so far as it was reduced to reflect contributory negligence.

Reversed and remanded for entry of a decree calling for recovery by the libellant of $15,000.

SWAN, Circuit Judge (dissenting in part).

On the issue of contributory negligence I am unable to distinguish the case at bar from Mason v. United States, 2 Cir., 177 F.2d 352. I think the judgment should be affirmed.